IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES A. WASHINGTON JR., | ) | CASE NO. 8:16CV68 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| THOMAS E. PEREZ, Secretary, | ) | AND ORDER |
| Department of Labor, and CLARENCE | ) | |
| H. WOOD JR., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Filing No. 14). For the reasons discussed below, the Motion will be granted and the Plaintiff's Complaint will be dismissed, with prejudice.

**FACTS**

The Defendants' Brief (Filing No. 17) contains a statement of material facts with pinpoint citations to the evidentiary record, in compliance with NECivR 56.1(a). Washington did not respond to the Defendants' statement of facts as required by NECivR 56.1(b)(1), and the facts presented in the Defendants' Brief are deemed admitted. *Id*. The following is a summary of those facts.

Washington is an African-American male who at all relevant times was employed by the United States Department of Labor ("DOL") as an equal opportunity specialist with the DOL Office of Federal Contract Compliance Programs ("OFCCP"). In February 2014, Washington initiated an informal Equal Employment Opportunity ("EEO") complaint process. In March 2014, Washington, through counsel, filed the first of two bankruptcy protection proceedings in the U.S. Bankruptcy Court for the District of Nebraska. In

connection with Washington's bankruptcy proceeding, he was required to list contingent and unliquidated claims of every nature, as well as all suits and administrative proceedings to which he was a party within one year preceding the filing of his bankruptcy action. He did not list any EEO claim or proceeding.  On April 1, 2014, the Civil Rights Center at DOL received Washington's formal EEO complaint, alleging employment discrimination. Washington's first bankruptcy action was closed on July 11, 2014.

On August 1, 2014, Washington, through counsel, filed his second bankruptcy protection proceeding.  Although his formal EEO complaint was pending, he did not disclose it as a contingent or unliquidated claim, or as an administrative proceeding to which he was a party, as required. Washington's bankruptcy was discharged on August 17, 2015, and the action was closed on August 24, 2015.

Washington received a 41-page Final Agency Decision from DOL on November 13, 2015, addressing his claims of race discrimination and hostile work environment, and finding his complaint to be without merit.

On February 8, 2016, Washington filed this action against Thomas E. Perez ("Perez"), Secretary of DOL, and Clarence H. Wood ("Wood"), Washington's immediate supervisor, who is also African-American. Washington alleges race discrimination, several counts of retaliation, hostile work environment, intentional infliction of emotional distress, and breach of contract, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 *et seq*. ("NFEPA"); state common law; and a collective bargaining agreement ("CBA") between DOL and the National Council of Field Labor Locals, AFGE, AFL-CIO.  (Complaint, Filing No. 1.) He seeks declaratory

and injunctive relief, and compensatory and punitive damages.  (*Id.* at 19-20.)

The Defendants do not take issue with the factual allegations in Washington's Complaint at this stage of the proceedings, and those allegations are accepted as true for purposes of the pending Motion.  The great bulk of Washington's allegations concern petty slights and aggravations he contends he suffered under the supervision of Wood and an earlier supervisor, Bruce E. Timberlake, who–like Washington and Wood–is African-American.  Washington also lists many examples of mismanagement and unprofessional conduct on the part of his supervisors and co-workers, concluding that "DOL is not the model workplace."  (*Id*. ¶ 29.) He alleges that he has become severely depressed and suicidal, and is undergoing psychiatric treatment, as a result of the Defendants' conduct.  (*Id*. ¶¶ 63-65.)

Liberally construing the Complaint, only two of Washington's allegations describe adverse employment actions.  First, he contends he was eligible for a promotion on March 24, 2014, but a co-worker who is not a member of a protected class was promoted instead, due to Wood's heightened scrutiny of Washington's work, negative evaluations, and the limited opportunities Wood gave Washington to gain needed experience.  (*Id.* ¶ 15.) Washington suggests that the Defendants' failure to promote him was race-based discrimination, and retaliation for his complaints of discrimination.  (*Id*. ¶¶ 33-38, 40-45.) Second, Washington contends he was suspended from work without pay for seven days following Wood's investigation of a co-worker's allegation that Washington came to work with alcohol on his breath on August 22, 2014.  (*Id.* ¶ 23.) Washington suggests this action was taken in retaliation for his earlier allegations of race discrimination.  (*Id*. ¶¶ 47, 48.)

3

## STANDARDS OF REVIEW

**Fed. R. Civ. P. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "'Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions.'" *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)). "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**Fed. R. Civ. P. 56**

In the context of a summary judgment motion, the Court's function is to consider the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor, and to determine whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Blakely v. Schlumberger Tech. Corp.,* 648 F.3d 921, 933 (8th Cir. 2011). The proponent of a motion for summary judgment has the initial burden of stating the basis for its motion and identifying, "particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to show the absence of a genuine dispute as to material facts. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party's burden is to identify with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*.

A separate summary judgment standard does not exist for employment discrimination cases. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir.), *cert. denied,* 132 S. Ct. 513 (2011). In the employment discrimination context, summary judgment remains a "useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Id.*

## DISCUSSION

### Elements of the Causes of Action

Without direct evidence of discrimination, a plaintiff in a Title VII action asserting race discrimination must establish a prima facie case by showing that he "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful . . . discrimination" on the basis of a protected class status, *i.e.*, race. *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014). To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739

(8th Cir. 2005). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Buboltz v. Residential Advantages, Inc.,* 523 F.3d 864, 868 (8th Cir. 2008). A claim of discrimination under 42 U.S.C. § 1981 is subject to "essentially the same" discrimination analysis as Title VII disparate-treatment claims. *Briggs v. Anderson,* 796 F.2d 1009, 1021 (8th Cir. 1986). Similar to Title VII, NFEPA prohibits employers from taking adverse action against individuals "because of such individual's race, color, religion, sex, disability, marital status, or national origin." Neb. Rev. Stat. § 48–1104(1). NFEPA "is patterned after Title VII," and "it is appropriate to consider federal court decisions construing the federal legislation" when considering questions under NFEPA. *City of Fort Calhoun v. Collins*, 500 N.W.2d 822, 825 (Neb. 1993); see also *Orr v. Wal–Mart Stores, Inc*., 297 F.3d 720, 723 (8th Cir. 2002).

To establish a claim of harassment or hostile work environment, a plaintiff must show: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194–95 (8th Cir. 2006). "[P]etty slights, minor annoyances, and simple lack of good manners" do not constitute a hostile work environment, nor will they support a claim of discrimination or retaliation. *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

To establish a claim based on intentional infliction of emotional distress, a plaintiff must show: "(1) intentional or reckless conduct (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community and (3) that the

7

conduct caused emotional distress so severe that no reasonable person should be expected to endure it." *Roth v. Wiese*, 716 N.W.2d 419, 431 (Neb. 2006) (citing *Brandon v. County of Richardson*, 624 N.W.2d 604 (Neb. 2001)).

"Under Nebraska law, to recover for breach of express contract, 'the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty.'" *168th and Dodge, LP v. Rave Reviews Cinema, LLC,* 501 F.3d 945, 950 (8th Cir. 2007) (quoting *Phipps v. Skyview Farms, Inc.*, 610 N.W.2d 723, 730 (Neb. 2000)).

**<u>Judicial Estoppel</u>**

Washington's Complaint fails to state a plausible claim based on hostile work environment, intentional infliction of emotional distress, or breach of contract.  As noted above, the only plausible race-discrimination or retaliation claims he presents are those related to the March 24, 2014, failure-to-promote, and the August 2014 suspension.  Wood is not a proper party Defendant with respect to such claims, and they must be dismissed as to Wood.  See 42 U.S.C. § 2000e-16(c);  *Schoffstall v. Henderson*, 223 F.3d 818, 821 n. 2 (8th Cir. 2000) (stating that "supervisors may not be held individually liable under Title VII") (citing *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691-92 (8th Cir. 1997)).

With respect to the plausible claims, the only proper Defendant is Perez, who argues that the claims must be dismissed based on principles of judicial estoppel.  Perez relies on Eighth Circuit precedent in factually similar cases where a plaintiff failed to disclose discrimination or retaliation claims in bankruptcy proceedings.  *See Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) (stating that a "debtor who had not disclosed an employment discrimination lawsuit arising during the pendency of his bankruptcy

8

proceedings was judicially estopped from pursuing his claims") (citing *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1032-33 (8th Cir. 2016)). *See also EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 679-81 (8th Cir. 2012) (concluding that the district court did not abuse its discretion by applying judicial estoppel to preclude employees from pursuing Title VII claims against employer in light of their failure to disclose those claims in bankruptcy proceedings).

Here, all three factors suggesting the application of judicial estoppel apply: (1) Washington's claims of discrimination and retaliation presented in this action are clearly inconsistent with the previous position he asserted in his bankruptcy proceedings; (2) he succeeded in persuading the bankruptcy court to accept his position that he had no contingent or unliquidated claims of any nature, nor any administrative proceedings to which he was a party within one year preceding the filing of his bankruptcy action; and (3) he would derive an unfair advantage by pursuing his claims if not estopped. *See Van Horn*, 812 F.3d at 1182 (citing *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006), and *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed.2000))). This Court concludes that judicial estoppel precludes Washington from pursuing his potentially cognizable claims of race discrimination and retaliation, and summary judgment will be granted in favor of Perez with respect to such claims.[1]

---

[1] While the Defendants' position that the Court may take judicial notice of the bankruptcy proceedings is well-taken, the Court will treat the Motion as one for Summary Judgment with respect to the claims that are potentially cognizable on the face of the Complaint. See Fed. R. Civ. P. 12(d). All parties have had an opportunity to present all material pertinent to the Motion, and the Court has considered the Indexes of Evidence presented by the Plaintiff (Filing No. 25) and the Defendants (Filing No. 16).

**Motion to Amend**

Washington has moved for leave to file an Amended Complaint. (Filing No. 26.) The Court has reviewed the proposed First Amended Complaint (Filing No. 25 at 115-136) and concludes the amendment would be futile. Accordingly, the Motion for Leave to Amend will be denied.

IT IS ORDERED:

1. The Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Filing No. 14) is granted;

2. The Plaintiff's Complaint (Filing No. 1) is dismissed, with prejudice;

3. The Plaintiff's Motions for Leave to Amend (Filing Nos. 23 and 26) are denied; and

4. A separate Judgment will be entered.

. .

DATED this 14th day of July, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge